J.A13044/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTOPHER PASSODELIS, JR., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ERIE INSURANCE COMPANY, ERIE | : | |
| INSURANCE PROPERTY & CASUALTY | : | |
| COMPANY, ERIE INDEMNITY COMPANY, | : | |
| ERIE INSURANCE EXCHANGE ACTIVITIES | : | |
| ASSOCIATION, INC. D/B/A ERIE | : | |
| INSURANCE EXCHANGE, ERIE | : | |
| INSURANCE GROUP, ROBB LEONARD | : | |
| MULVIHILL, LLP, ARTHUR J. LEONARD, | : | |
| FINLEY CONSULTING & | : | |
| INVESTIGATIONS, INC., AND | : | |
| NICOLLETTE JENA | : | |
| | : | No. 2873 EDA 2013 |

Appeal from the Order Entered September 4, 2013
In the Court of Common Pleas of Philadelphia County
Civil No(s).: 04368 April Term, 2013

BEFORE: ALLEN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:             **FILED SEPTEMBER 16, 2014**

Appellant, Christopher Passodelis, Jr., appeals from the order entered

in the Philadelphia Court of Common Pleas granting the motion of Appellees,

Robb Leonard Mulvihill, LLP, and Arthur J. Leonard (collectively "RLM"), to

transfer venue of his negligent supervision and defamation action from

---

[*] Former Justice specially assigned to the Superior Court.

Philadelphia County to Allegheny County.[1]  Appellant and RLM are residents of and located in Allegheny County.  Appellant contends the trial court abused its discretion by granting RLM's motion because it failed to consider the negative effects to his reputation and career, as well as his embarrassment and emotional distress, by having the lawsuit resolved in Allegheny County.  We affirm.

We state the facts as set forth by the trial court.

> This [instant] action involves a defamation claim arising [out of RLM's] defense of an underlying defamation action. [In the underlying action, on] December 1, 2011, [Appellant], a resident of Allegheny County, filed [a] defamation claim against Emmanuel Lardas for publishing flyers in Allegh[e]ny County that called [Appellant] a child molester.  [Erie] provided indemnity and defense to Mr. Lardas pursuant to Mr. Lardas'[s] homeowners insurance policy.  Erie hired [Robb Leonard Mulvihill, LLP], a law firm with its [principal] office located in Allegheny County, and [Mr.] Leonard, resident of Allegheny County, to defend Mr. Lardas in the [underlying] action.

> [In the underlying action, RLM] hired [Finley] as private investigators to question people in Allegheny County about the alleged defamatory statement.  [Appellant] alleges that Ms. Jena questioned one of [Appellant's] former employees about whether or not [Appellant] was a child

---

[1] Appellees Erie Insurance Company, Erie Insurance Property & Casualty Company, Erie Indemnity Company, Erie Insurance Exchange Activities Association, Inc., doing business as Erie Insurance Exchange, and Erie Insurance Group (collectively, "Erie"), did not join RLM's motion or file a separate motion to transfer venue.  Appellees Finley Consulting & Investigations, Inc., and Nicollette Jena (collectively, "Finley"), also did not join RLM's motion but did file preliminary objections that asserted, *inter alia*, Allegheny County was the proper venue.  Erie notified this Court that it would not file an appellate brief; Finley did not file an appellate brief.

molester. [Appellant] alleges that the manner in which Ms. Jena questioned the employee suggested that [Appellant] is, in fact, a child molester. [Appellant] alleges that he has suffered damage to his character and reputation within his community of Allegheny County.

Trial Ct. Op., 10/17/13, at 1-2 (misspellings corrected).

Appellant subsequently filed the instant lawsuit in Philadelphia County, which raised the following claims: (1) defamation against RLM, Finley, and Erie; (2) negligent supervision against RLM; and (3) negligent supervision against Finley. Appellant's Compl., 7/15/13, at 22, 26-27.[2] RLM filed preliminary objections and a motion to transfer venue to Allegheny County based on *forum non conveniens*. The court docketed the trial court's order granting RLM's motion on September 4, 2013.

Appellant timely appealed; this interlocutory order is appealable as of right. **See** Pa.R.A.P. 311(c). The court did not order Appellant to comply with Pa.R.A.P. 1925(b), but filed a Pa.R.A.P. 1925(a) decision:

In the instant case, [Appellant, Mr. Leonard, and Ms. Jena] are all residents of Allegheny County. RLM is a law firm with its [principal] place of business in Allegheny County. The alleged defamatory statements which serve as the basis for [Appellant's] claims were made in

---

[2] The tenor of the complaint implies that the alleged tortious conduct occurred in Allegheny County. For example, Appellant extensively detailed the alleged defamatory interview by Ms. Jena. **See** Appellant's Compl. at 19-21. Appellant, however, did not identify where the interview occurred. Given the procedural posture, we accept as true that the claims could have occurred outside of Allegheny County.

- 3 -

Allegheny County.[3] The flyers containing the alleged defamatory statements at issue in the underlying defamation claim were published in Allegheny County. [Appellant] claims he has suffered loss of reputation and public scorn in his community. [Appellant's] community is located in Allegheny County and the people needed to substantiate [Appellant's] claims of loss of reputation and business relationships are all located in Allegheny County. If the case were tried in Philadelphia County, [all of Appellees] and other expected witnesses will be forced to incur travel expenses coming to Philadelphia.

Trial Ct. Op. at 2-3 (misspellings corrected).

Appellant raises the following issues:

Did the trial court err by ignoring [Appellant's] reasons for selecting Philadelphia as his venue, when the court was obligated to give deference to that choice of forum?

Did the trial court err in transferring venue where [RLM] failed to meet its burden of proving vexation or oppression with detailed information on the record?

Appellant's Brief at 2 (emphasis omitted).

We summarize Appellant's arguments for both of his issues. Appellant alleges he is a well-known attorney in Pittsburgh and thus filed suit in Philadelphia County to minimize potential adverse publicity. Appellant complains the trial court's order left him with only two options: (1) litigate the case in Allegheny County, or (2) forego litigation. The trial court, Appellant suggests, failed to identify anything vexatious or oppressive about Philadelphia County. To the extent conducting discovery would be

---

[3] As noted above, Appellant implied, but did not aver, that the interview occurred in Allegheny County.

oppressive, Appellant hypothesizes any inconvenience could be remedied through case management orders. We note Appellant does not assert trial would not be inconvenient in Philadelphia County. We hold Appellant did not establish entitlement to relief.

The standard of review is abuse of discretion. ***Bratic v. Rubendall***, 21 EAP 2013, 2014 WL 4064028, at *3 (Pa. Aug. 18, 2014).[4] In ***Bratic***, our Supreme Court set forth the background for a motion to transfer based on *forum non conveniens*:

> Plaintiffs have long been provided with the initial choice of the court in which to bring an action, if that court has jurisdiction. ***See Plum v. Tampax, Inc.***, 399 Pa. 553, 160 A.2d 549, 552–53 ([ ] 1960) ("'While the plaintiff ordinarily controls choice of the forum, a court does not exercise jurisdiction if it is a seriously inappropriate forum for the trial of the action so long as an appropriate forum is available to the plaintiff.'" (quoting Restatement (Second) of Conflict of Laws § 117e (Tentative Draft No. 4, 1957))). This practice derives from the notion of convenience to the plaintiff, not from the desire to pursue verdicts in counties perceived to be more plaintiff-friendly. While a plaintiff need not provide reasons for selecting one venue over another, the doctrine of *forum non conveniens* is a necessary counterbalance to [e]nsure fairness and practicality. This Court has emphatically stated that the plaintiff's choice of forum . . . is entitled to weighty consideration; thus, the party seeking a change of venue bears a heavy burden in justifying the request, and it has been consistently held that this burden includes the demonstration **on the record** of the claimed hardships. When ruling on a petition to transfer venue pursuant to Rule 1006(d)(1), trial courts are vested with considerable

---

[4] The ***Bratic*** decision was issued after the trial court rendered its ruling and the parties submitted their appellate briefs.

discretion . . . to balance the arguments of the parties, consider the level of prior court involvement, and consider whether the forum was designed to harass the defendant.

\* \* \*

[***Cheeseman v. Lethal Exterminator, Inc.***, 701 A.2d 156 (Pa. 1997),] clarified the factors on which a trial court may rely when ruling on a *forum non conveniens* motion, holding a petition to transfer venue should be granted only if the defendant demonstrat[es], with detailed information on the record, that the plaintiff's chosen forum is oppressive or vexatious to the defendant. So called "public interest" factors affecting the court's own concerns are not controlling because Rule 1006(d)(1) speaks only in terms of convenience to the parties and witnesses, not the courts. By way of example, Justice Cappy noted:

> [T]he defendant may meet its burden of showing that the plaintiff's choice of forum is vexatious to him by establishing . . . the plaintiff's choice of forum was designed to harass the defendant, even at some inconvenience to the plaintiff himself. Alternatively, the defendant may meet his burden by establishing . . . trial in the chosen forum is oppressive to him; for instance, that trial in another county would provide easier access to witnesses or other sources of proof, or to the ability to conduct a view of premises involved in the dispute. But, we stress that the defendant must show more than that the chosen forum is merely inconvenient to him.

***Id.***, at 162 (footnote and internal citation omitted). Thus, ***Cheeseman*** was not intended to increase the level of oppressiveness or vexa[t]iousness a defendant must show; rather, understood in its articulated context, ***Cheeseman*** merely corrected the practice that developed in the lower courts of giving excessive weight to "public interest" factors when ruling on a *forum non conveniens* motion. Whatever public interest factors exist, they are not determinative; they are only a factor insofar as they bear directly on the ultimate test. And while Rule 1006(d)(1)

on its face allows transfer based on the convenience of the parties, convenience or the lack thereof is not the test our case law has established: the moving party must show the chosen forum is either oppressive or vexatious.

**Bratic**, 2014 WL 4064028, at *3-*4 (some punctuation and citations omitted). We may also affirm on any basis. **Donnelly v. Bauer**, 720 A.2d 447, 454 (Pa. 1998).

Having clarified the law, the **Bratic** Court reviewed the *en banc* Superior Court's reversal of the trial court's order transferring venue from Philadelphia County to Dauphin County. **Bratic**, 2014 WL 4064028, at *2. The trial court in **Bratic** had reasoned as follows:

(1) the earlier claim took place in Dauphin County; (2) all [of the defendants] are from Dauphin County and none of [the plaintiffs] are from Philadelphia County; (3) each of [the defendants'] eight witnesses lives over 100 miles from Philadelphia County and is engaged in business activities which make their ability to appear at trial in Philadelphia County far more of a burden than a trial in Dauphin County; and (4) the sole connection with Philadelphia County is the fact that all [defendants] occasionally conduct business in Philadelphia.

**Id.** at *1 (punctuation and citation omitted).

Our Supreme Court held the trial court's rationale was sound:

Turning to the instant matter, we find the trial court's proper consideration of the totality of the evidence justified the order to transfer the case.

*   *   *

[I]t is evident from the [trial] court's opinion that transfer was based on other enumerated factors, not the residences of [the plaintiffs] or counsel, nor on congestion of the courts. As with other factors not sufficient for

- 7 -

transfer themselves, if residence is probative of oppressiveness, it is not error to reflect upon it, so long as it is not the sole reason for the judge's decision. Indeed, in **Cheeseman** itself, Justice Cappy pointed out that access to witnesses or other sources of proof was an entirely legitimate factor when determining oppressiveness . . . and the plaintiffs are certainly sources of proof.

\* \* \*

It cannot be said the trial court misapplied the law or failed to hold [the defendants] to their proper burden to establish oppression. While typically the fact that the site of the precipitating event was outside of plaintiff's choice of forum is not dispositive, it is axiomatic that when the case involves a transfer from Philadelphia to a more distant county, factors such as the burden of travel, time out of the office, disruption to business operations, and the greater difficulty involved in obtaining witnesses and sources of proof are more significant.

As with other factors insufficient on their own, **distance alone is not dispositive, but it is inherently part of the equation**. The **Cheeseman** decision actually involved two cases, both filed in Philadelphia County and transferred to neighboring Bucks County because of court congestion in the former. Dauphin County, however, is not a neighbor of Philadelphia, and one needs no detailed affidavit to understand the difference in logistics necessitated by a separation of 100 miles. It is not necessary to articulate to a jurist the inherently empirical concept that distance and expedience are inversely proportional.

\* \* \*

The trial judge need not be told like a child how the distance in and of itself makes things more disagreeable and disruptive to the persons obliged to travel. Nor is it a secret requiring iteration that trial in Dauphin County would provide easier access to local [defendants] and their local witnesses, as well as the relevant court documents on which the very case is based.

* * *

> As between Philadelphia and adjoining Bucks County, the situation in **Cheeseman**, we speak of mere inconvenience; as between Philadelphia and counties 100 miles away, simple inconvenience fades in the mirror and we near oppressiveness with every milepost of the turnpike and Schuylkill Expressway.

*Id.* at *4-*7 (emphasis added and punctuation, footnotes, and citations omitted). Our Supreme Court thus reversed the *en banc* Superior Court and reinstated the trial court's order transferring the case from Philadelphia County to Dauphin County. *Id.* at *7.

Instantly, as noted above, Appellant claims RLM failed to identify anything vexatious or oppressive about Philadelphia County.[5] The trial court, however, proffered reasons almost identical to the trial court in **Bratic**: (1) the alleged claims occurred in Allegheny County; (2) all parties, including Appellees, are from Allegheny County and none of the parties, including Appellant, are from Philadelphia County; (3) the sole connection with Philadelphia County is that some of Appellees conduct business in Philadelphia; (4) the underlying defamation claim involved statements in Allegheny County; and (5) many sources of proof are in Allegheny County. *See* Trial Ct. Op. at 2-3; *cf. Bratic*, 2014 WL 4064028, at *1.

---

[5] Appellant curiously assumes that the trial court's order left him with only two options: pursue litigation with the theoretical potential for publicity that may increase his embarrassment or withdraw his lawsuit. Appellant's Brief at 9. Speculating that the order could result in a parade of horribles, we observe, does not necessarily establish an abuse of discretion.

Similar to the trial court in **Bratic**, the instant trial court did not err by recognizing the parties' residences, as it was not the sole reason for the transfer. **See Bratic**, 2014 WL 4064028, at *5 (holding, "if residence is probative of oppressiveness, it is not error to reflect upon it" and "it is evident from the court's opinion that transfer was based on other enumerated factors, not the residences of appellees or counsel . . . ."). The trial court considered the parties' residences in addressing "access to witnesses or other sources of proof," which our Supreme Court held is an "entirely legitimate factor when determining oppressiveness . . . and [Appellant and RLM] are certainly sources of proof." **See id.** at *4.

Furthermore, "it is axiomatic that when the case involves a transfer from Philadelphia to a more distant county, [such as Allegheny County,] factors such as the burden of travel, time out of the office, disruption to business operations, and the greater difficulty involved in obtaining witnesses and sources of proof are more significant." **Id.** at *4-*5. We take judicial notice that Allegheny County is further away from Philadelphia County than Dauphin County. **See also Bratic**, 2014 WL 4064028 at *6 (holding, "It is not necessary to articulate to a jurist the inherently empirical concept that distance and expedience are inversely proportional."). To paraphrase our Supreme Court, "trial in [Allegheny] County would provide easier access to local [Appellant and Appellees] and their local witnesses, as well as the relevant court documents on which the very case" and underlying

case are based. *Id.* at *6. We again paraphrase the **Bratic** Court: "As between Philadelphia and adjoining Bucks County, . . . we speak of mere inconvenience; as between Philadelphia and counties 100[s of] miles away[, such as Allegheny County,] simple inconvenience fades in the mirror and we near oppressiveness with every milepost of the turnpike . . . ." *Id.* at *7.

In sum, the trial court weighed the parties' residences, access to sources of proof, site of the precipitating event, and distance from Philadelphia County in ascertaining oppressiveness. *See id.* at *4-*7. After examining the entire record, including the allegations in the pleadings, the similarities with the facts in **Bratic**, and our Supreme Court's admonition "that distance and expedience are inversely proportional," we hold the trial court did not abuse its discretion. *See id.* at *7. Accordingly, we affirm the order below. *See id.*

Order affirmed.

Judge Allen joins the memorandum.

Judge Mundy concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/16/2014